# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLORADO
Bankruptcy Judge Elizabeth E. Brown

| | |
|---|---|
| In re: ) | |
| ) | |
| BAHRAM AMIR JAFARI, ) | Bankruptcy Case No. 07-16717 EEB |
| ) | Chapter 7 |
| Debtor. ) | |
| _____ ) | |
| ) | |
| ROSEANN FARIS, ) | |
| THE ESTATE OF STELLA DELUCIA, and ) | |
| RODNEY NUSSE, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Adversary Proceeding No. 07-01675 EEB |
| ) | |
| BAHRAM AMIR JAFARI, ) | |
| ) | |
| Defendant. ) | |

## ORDER

THIS MATTER originally came before the Court on the Plaintiffs' Motion for Partial Summary Judgment ("Motion"), in which they sought judgment on their nondischargeability claim under 11 U.S.C. § 523(a)(19),[1] alleging securities law violations and fraud. The Court requested further briefing from the parties as to whether this Court could make a determination of liability for securities violations or fraud in the first instance or whether the language of this statute required the liability determination, as opposed to the nondischargeability determination, to come from outside of this proceeding. On further consideration, the Court concludes that Plaintiffs cannot establish this claim without first obtaining a written determination of liability from another tribunal.

**I.      Background**

According to the Plaintiffs, the Debtor is a financial advisor who solicited their investment in a financial services company named Mountain Resources, Inc. ("MRI"). The Debtor was an officer, director and shareholder of MRI. Plaintiffs made investments by giving

---

[1] Unless otherwise specified, all references to "Sections" are to sections in Title 11, United States Code.

the Debtor authority to exchange the stocks in their trading accounts for stock in MRI. Debtor provided statements to Plaintiffs indicating that their investments were growing, when in fact MRI was experiencing financial difficulty and eventually became insolvent. They lost their entire investment in MRI. They allege numerous securities law violations as well as fraud. But as of the date of the Motion, Plaintiffs had not yet filed an action in another forum to obtain an order, judgment or decree, holding the Debtor liable for securities violations or securities fraud. Nor have they entered into a settlement agreement with the Debtor resolving a claim for securities violations or securities fraud. The only action they have taken is to file this adversary proceeding, asking the Court to hold their claims nondischargeable under either § 523(a)(2)(A), (a)(2)(B), (a)(4), (a)(6), or (a)(19). The present motion seeks a ruling on the § 523(a)(19) claim only.

## II.     Discussion

Section 523(a)(19) renders nondischargeable debts arising from securities law violations and fraud in connection with a purchase or sale of securities. It was added to the Bankruptcy Code by § 803 of the Sarbanes-Oxley Act of 2002. See Sarbanes-Oxley Act of 2002, Pub.L. No. 107-24, § 803(3), 116 Stat. 745. Section 523(a)(19) was subsequently amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").[2] As amended, § 523(a)(19) provides that a discharge under 727 does not discharge a debt that:

> (A) is for-
>
>> (i) the violation of any of the Federal securities laws, . . . any of the State securities laws, or any regulation or order issued under such Federal or State securities laws; or
>>
>> (ii) common law fraud, deceit, or manipulation in connection with the purchase or sale of any security; and
>
> (B) results, *before, on, or after the date on which the petition was filed*, from
>
>> (i) any judgment, order, consent order, or decree entered in any Federal or State judicial or administrative proceeding;
>>
>> (ii) any settlement agreement entered into by the debtor; or
>>
>> (iii) any court or administrative order for any damages, fine, penalty, citation, restitutionary payment, disgorgement payment, attorney fee, cost, or other payment owed by the debtor.

---

[2] Congress explicitly made this statutory amendment retroactively effective to July 30, 2002, the enactment date of the Sarbanes-Oxley Act.

11 U.S.C. § 523(a)(19) (italicized words added by BAPCPA).

Essentially, this statute precludes dischargeability if two conditions are met. First, the Plaintiffs must establish that the debt is for violation of securities laws or for fraud in connection with the purchase or sale of a security (the **"Subsection A requirement"**). In addition, the debt must be memorialized in a judicial or administrative order or settlement agreement (the **"Subsection B requirement"**). If Plaintiffs cannot establish both requirements, their claim will fail.

As originally enacted, § 523(a)(19) required a *pre*-bankruptcy judgment, order or settlement agreement memorializing liability for the debt as a condition of nondischargeability, necessitating that the written document establishing liability had to come from outside the bankruptcy court. See *In re Weilein*, 319 B.R. 175, 180 (Bankr. N.D. Iowa 2004), *reconsidered* by 328 B.R. 553 (Bankr. N.D. Iowa 2005)(retroactively applying amended version of § 523(a)(19)). When the words "before, on, or after the date on which the petition was filed" were inserted by BAPCPA to eliminate the temporal requirement, it invited debate as to whether § 523(a)(19) now allows a bankruptcy court to render its own determination of liability for securities law violations or fraud or whether the liability determination must still be made outside of the bankruptcy court. The Plaintiffs have argued that the removal of the requirement of a *pre*-bankruptcy determination authorizes this Court to determine both liability and nondischargeability, and to rely on its own finding of liability to satisfy the Subsection B requirement when rendering the decision on nondischargeability.

The only reported decision to have squarely addressed this question to date is *In re Chan*, 355 B.R. 494 (Bankr. E.D. Pa. 2006).[3] The *Chan* court refused to grant stay relief to allow the continuation of non-bankruptcy litigation against the debtors for a securities law violation. In declining to grant stay relief, the *Chan* court found it "perfectly appropriate for either the bankruptcy court or another court to make a dischargeability determination under § 523(a)(19)," because it held that claims asserted under § 523(a)(19) have not been committed exclusively to the bankruptcy court by § 523(c). The *Chan* court reasoned that, because the *nondischargeability* of any claim listed in § 523(c) may only be tried in the bankruptcy court, then the nondischargeability *as well as the liability* of any claim not listed in § 523(c) may be tried either in the bankruptcy court or in another forum. In short, the *Chan* court assumed that

---

[3] In *In re Zimmerman*, 341 BR. 77, 80 (Bankr. N.D. Ga. 2006), the bankruptcy court granted stay relief to allow the plaintiffs to arbitrate, among other claims, a claim for securities law violations, but retained jurisdiction to make the ultimate decision as to nondischargeability. Although the court was not presented with the question of whether the bankruptcy court had the authority to render the determination of a securities violation itself, and did not analyze that issue directly, as part of its analysis it found that § 523(a)(19) "expressly contemplates a post-petition determination of liability by a non-bankruptcy forum." *See also Bricker v. Martin*, 348 B.R. 28 (W.D. Pa. 2006), *aff'd* 265 Fed. Appx. 141 (3d Cir. 2008) (affirming bankruptcy court's *sua sponte* decision to abstain from deciding investors' § 523(a)(19) claim).

because Congress intended concurrent jurisdiction over § 523(a)(19) claims, it also intended that the determination of the underlying securities law violation or fraud determination itself could be made by any court sharing that concurrent jurisdiction.

The *Chan* court further found that the amendment to § 523(a)(19) was not intended to indicate Congressional intent that such claims be litigated in non-bankruptcy court forums, but was intended only to remove a temporal limitation as to when the determination of liability had to have been made. The *Chan* court reasoned that since the determination could now occur post-petition, and since either a bankruptcy court or a non-bankruptcy court could render the determination as to dischargeability, the bankruptcy court's own order could satisfy the Subsection B requirement.

This Court agrees that BAPCPA's amendment of this statute only removed the temporal limitation and that bankruptcy courts and non-bankruptcy courts share concurrent jurisdiction to determine the dischargeability of a § 523(a)(19) claim. But whichever court makes the *dischargeability* determination, and regardless of when the *liability* determination is made, the court must find that both requirements of the statute have been satisfied. Thus, the issue is not which court decides dischargeability, nor when the liability decision occurs, it is a question of how the Subsection B requirement can be satisfied.

The Subsection B requirement can best be understood by comparing the language of § 523(a)(19) with other provisions of § 523. For example, in § 523(a)(2)(A), the statute renders nondischargeable debts arising from fraud. It contains no requirement of a judgment, order, decree or settlement agreement finding that fraud has occurred. If no prior determination has been made, the bankruptcy court itself may hear and determine liability for fraud. If a determination of fraud has already been made in a non-bankruptcy court forum, then the bankruptcy court will analyze whether that prior adjudication is entitled to collateral estoppel in a § 523 proceeding. If the other forum's decision is not final or if it is the result of a default judgment, it may not be entitled to collateral estoppel. Similarly, if the parties entered into a settlement agreement, admitting fraud, the bankruptcy court might not give collateral estoppel effect if the matter had not been "actually litigated." If the admission or prior determination is not entitled to preclusive effect, then nothing in the statute prevents the bankruptcy court from hearing and determining if the debt arises from fraud, without regard to the prior determination. If the language of § 523(a)(19) had ended after its Subsection A requirement, it would have paralleled this language of § 523(a)(2)(A) and clearly the bankruptcy court would have been able to determine liability if it were not bound by a prior determination.

By including the Subsection B requirement in § 523(a)(19), however, Congress sought to signal something different. The legislative history emphasizes that a primary purpose of this statute was to ensure that judgments and settlements from state securities fraud cases are nondischargeable without the need to re-litigate the matter in bankruptcy court.

> [S]tate regulators are often forced to "reprove" their fraud cases in bankruptcy
> court to prevent discharge because remedial statutes often have different technical

> elements than the analogous common law causes of action.  Moreover, settlements may not have the same collateral estoppel effect as judgments obtained through fully litigated legal proceedings.  In short, with their resources already stretched to the breaking point, state regulators must plow the same ground twice in securities fraud cases.  *By ensuring securities law judgments and settlements in state cases are non-dischargeable, precious state enforcement resources will be preserved and directed at preventing fraud in the first place*.

148 Cong. Rec. S7418, 7419 (July 26, 2002) (statement of Senator Leahy) (emphasis added).[4]

By way of contrast, the language of § 523(a)(11) requires that a claim of fraud by a fiduciary committed with respect to a depository institution or insured credit union be provided for in a *"final* judgment, *unreviewable* order, or *consent* order or decree" of either a federal or state court or a federal depository institutions regulatory agency, or as contained in any settlement agreement with the debtor.  11 U.S.C. § 523(a)(11) (emphasis added).  This subsection requires finality in the prior adjudication, but like § 523(a)(19) it too is premised on a determination that arises outside of the bankruptcy court.

Similarly, § 523(a)(13) renders nondischargeable a debt for the payment of "an order of restitution issued under title 18, United States Code."  Section 523(a)(17) provides that a debt "for a fee imposed on a prisoner by any court" for certain types of filings are nondischargeable.  Subject to certain conditions, § 523(a)(7) makes nondischargeable a debt for "a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit."  In each of these subsections, the bankruptcy court does not litigate the underlying claim, but only whether such a claim has already been established.  For example, the court does not determine whether the debtor is guilty of a title 18 crime and/or whether restitution should be awarded.  "The court merely determines whether the order at issue has imposed an obligation that is in the nature of 'restitution' and whether it was issued under the federal criminal code."  *In re Jensen*, 395 B.R. 472, 488 (Bankr. D. Colo. 2008).

Thus, several subsections of § 523 are based on determinations that arise outside of the bankruptcy proceeding.  One of the required elements for a finding of nondischargeability under those statutes is that the *liability* determination has been made outside of the bankruptcy court.

---

[4] Title VIII of the Sarbanes-Oxley Act of 2002 is entitled "The Corporate and Criminal Fraud Accountability Act of 2002" (the "Accountability Act"). The Accountability Act was authored by Senate Judiciary Chairman Patrick Leahy, and introduced by Senator Leahy and others on March 12, 2002.  S.Rep. No. 107-146, at 2 (2002).  Section 803 of the Accountability Act, added subsection (19) to the exceptions to discharge enumerated in § 523(a) of the Bankruptcy Code.  The section-by-section analysis of the Accountability Act found at 148 Cong. Rec. S7418 was adopted as legislative history for the Accountability Act "in order to provide guidance in the legal interpretation of these provisions of Title VIII of H.R. 2673."  148 Cong. Rec. S7418 (July 26, 2002).

Other subsections contain no such requirements, such as subsections (a)(1) - (a)(4), (a)(6), (a)(8) - (a)(10), (a)(12), (a)(14), and (a)(18).[5] With the latter claims, the bankruptcy court is free to determine the liability in the first instance, subject to whatever limitations may be imposed by traditional preclusion doctrines and/or jurisdictional limitations. See 28 U.S.C. § 157(b)(5).

By including the Subsection B requirement, Congress ensured that existing determinations of securities fraud would be given preclusive effect without the need for re-litigation in the bankruptcy court. When it became clear that the language of the statute permitted the discharge of securities debts when the claims had not been reduced to judgment prior to bankruptcy, Congress amended the statute to remove the temporal requirement. At that time, if Congress' only concern was to give preclusive effect to non-bankruptcy determinations, and it had not intended to prevent the bankruptcy court from deciding liability itself, it could have eliminated the Subsection B requirement, and added to Subsection A that prior determinations by a court, regulatory agency, or the parties to a settlement agreement were to be given preclusive effect, without regard to traditional preclusion doctrines.

It is certainly possible that Congress' intent was only to ensure this preclusive effect, without intending to prevent the bankruptcy court from reaching its own determination of liability when no prior decision existed. On the other hand, it is also possible that Congress included the Subsection B requirement in order to give the regulators the advantage of their home turfs. But rather than speculating on Congress' intent, this Court must construe the language as it is actually written. It requires that an order, decree or agreement exist prior to a determination of nondischargeability. If the Court were to interpret this language broadly enough to allow the bankruptcy court's own order to satisfy the requirement, then it would essentially read the Subsection B requirement out of the statute. The Supreme Court has urged courts to "disfavor interpretations of statutes that render language superfluous." *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253 (1992). *See also United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah,* 472 F.3d 702 (10th Cir. 2006). Thus, the Court concludes that, absent a settlement agreement or other consensual determination of liability, Subsection B evidences a conscious choice to have *the liability determination* occur outside of the bankruptcy forum, whether it occurs pre- or post-bankruptcy. Once liability has been imposed, then either a bankruptcy court or a non-bankruptcy court may determine the application of this nondischargeability statute.

### III.   Conclusion

For the reasons set forth above, the Plaintiffs cannot prevail on their Motion in its present form. By separate Order, the Court will convene a status conference to determine how the Plaintiffs wish to proceed, such as holding the case in abeyance while they seek to obtain a non-

---

[5] Section 523(a)(9) was amended in 1990 specifically to delete a requirement of a judgment or consent decree. See analysis in *In re Weilein*, 319 B.R. 175, 178 (Bankr. N.D. Iowa 2004).

bankruptcy court ruling on their § 523(a)(19) claim or whether they wish to forego this claim and pursue the other claims they have asserted in this proceeding.

DATED this 3rd day of February, 2009.

BY THE COURT:

Elizabeth E. Brown
United States Bankruptcy Judge